Good morning. I'm Victoria Bramble for Mr. Rodriguez-Cuevas. I would like to reserve two minutes for rebuttal, if I can. When the government urged the district court in this case to not accept the plea agreement, Mr. Rodriguez-Cuevas lost the benefit of the bargain that we had made together with the prosecutor. What ended up is that instead of presenting a united front to the court, urging the court of reasons why the plea agreement should be accepted, the prosecutor basically told the court, I can't think of a good reason, Your Honor, why you should accept the agreement. And so whatever opportunity we had to try to convince the court to go ahead with the plea agreement was lost. I realize that being in front of the court on a plain error standard is less than desirable, but on the other hand, I believe that we meet that standard and that because the error was plain and that Mr. Rodriguez-Cuevas' substantial rights were affected, he did suffer considerable prejudice as a result of this error. Basically, we ended up, he ended up getting sentenced to 27 months more than the low end of the plea agreement range, 20 months more than even the high end of the range that the plea agreement allowed. Let me ask you, jump in with a couple of questions. This was an 11C agreement? Yes, it was. If the court had accepted the plea agreement, there was a binding sentence that Judge Rohl would have had to impose, correct? He would have had to have imposed, yes. And the probation office recommended rejecting the plea agreement? That's correct. And at the beginning of sentencing, Judge Rohl announced that, indeed, he was inclined to reject the plea agreement, correct? That's correct. In the face of what the probation office recommended and what Judge Rohl said he intended to do, what impact could the U.S. Attorney's statement have made? Well, we don't know because we never had that chance, but there were good reasons to accept the plea agreement. I stated several of them. What was missing from the picture was the U.S. Attorney's reasons why and all that the prosecutor offered. It's important to point out that the prosecutor who was at sentencing was not the U.S. Attorney who had offered the plea. That's apparent from the record. Let me ask you this, too. The terms of the plea agreement gave the government an out, if you will, didn't it? If the defendant had an aggravated felony condition. Or was on supervised release. That's correct. And didn't it turn out that he was? He was, but the nature of it. I agree that the responsible thing for the government to have done would have been to say, Your Honor, the plea agreement has an escape clause for the government based on discovered evidence. We've discovered that evidence. We've met this exception. Our position is we're no longer bound by the plea agreement. They could have said that and been entirely correct, right? I don't know that they would have prevailed on that, because. I'm not asking whether they prevailed or not. By making the statement I just described, they would have been correct and turning square corners, correct? That's correct. If they had asked for an out, we could have had a hearing on it. So I would have had an opportunity to respond, and then it all could have been sorted out, I think, in the proper way. I don't believe they would have prevailed, because the aggravated felony conviction was the one that was set forth in the factual basis of the plea agreement. So I think they would have been hard-pressed to say. How about the supervised release? That wasn't evident on the face. That's a problem, isn't it? It is a problem in the sense that it wasn't evident from the face of the plea agreement. I think the government would, I believe they would have to say we knew about it, because it was. The plea agreement had an integration clause, didn't it? Yes. This is it. Everything that binding or whatever considered is in the four corners of this document, outside stuff doesn't matter, that kind of thing. I don't know that it. Standard boilerplate. A lot of boilerplate. I don't know that it went quite that far, but certainly the government is well-protected by the terms of its plea agreements. I believe that had we gone that way, I would have been able to point out to the court that these facts were evident and were known to the government. And, in fact, the government did not move to withdraw because for whatever reason they chose. Going back to a previous point, I think that what the government could have told the court in urging the court to accept the plea agreement is that they had an uncooperative victim. In fact, a victim who not only was not cooperative with them, but who was very defense-oriented. And I think that that knowledge, if they had a victim who wasn't willing to come to trial or who did not come to trial, they would have had a very difficult time proving their case. The 911 call was not made by the victim, so the usual excited utterances that might be there in a domestic violence case, regardless of the victim's cooperation, would not have been automatically admissible. So there were good reasons, aside from the defendant's own background, which was, I thought, compelling and tragic and very outside the heartland of defendants normally in front of the court. There were good prosecutor-oriented reasons why the court should accept the plea agreement, and that wasn't gone into. Also, the government's attorney, it appears from the record, had not really talked to her subordinate attorney about those reasons. So that was something that was lacking. But instead of saying that, she urged the court to reject the agreement. I just wanted to take a minute or two, if the court didn't have any other questions on this issue, to just go into my argument about the district court and what the district court should have done at sentencing. I'm sure the court is aware of the Dominguez-Benitez case that the Supreme Court decided on Monday. I don't think that really adversely affects our appeal, because a very small part of my argument was based on that. And in the Dominguez-Benitez court, the Supreme Court basically stressed that before it was basically technical rule violations that did not rise to the level of due process violations. And that's why I'm here. And that's the kind of thing that the Dominguez-Benitez court could have done. He simply could have come out and said, for the reasons stated in the PSR, the presentence report, I have determined that I'm going to reject this plea agreement, and I reject it, and walk off the bench, and then you're back in the ballgame. That's one thing he could do. Right? That's right. And that's an important thing, because that would have given me an opportunity to confer with my client at an important and meaningful time. But the judge gave you seven days after he had imposed the sentence. And the nice thing about the way that the judge, it seems to be one advantage to you in the way the judge handled this, is that you had the benefit of deciding whether or not you were going to accept the, whether or not you were going to take the plea, you were going to plea after you heard the sentence. So you didn't have to make that decision before you got the sentence. So you knew everything going in as to what the consequences were. And he's still giving you a week after the hearing to come back and say, you know, we thought about it for a week, Judge, and we just don't want to do this. I would say that that procedure, although maybe considerate to counsel, isn't what the rules contemplate. It's beyond what the rules contemplate, isn't it? In a way. It's more favorable to you than what the rules would contemplate. It would give us more time to try to weigh the correct course of action, but he was already sentenced at that point. And But Judge Rohl made very clear that if, that if you filed on behalf of your clients a simple piece of paper saying we elect to withdraw from the plea agreement, he would withdraw the sentence and you would be back to step one. He made that very clear, didn't he? He did make that clear. The other, what I think are larger concerns are what his comments when I offered to get a psychological evaluation. When we walked into court, we didn't know for sure what the, we knew we had a recommendation by the probation department. We didn't know if the court would accept the plea or not. I thought an important thing to offer the court would be a psychological evaluation because there were facts in the record, undisputed facts in the pre-sentence report to show that there may be some things there. A car accident with a month long. Did you object to the judge's failure to grant a psychological evaluation? I didn't make an objection. I asked for it in court and the court, the district court said, well, I don't see what difference that would make. So are you arguing that's plain error or abuse of discretion? I would argue that it's abuse of discretion, although even under the plain error standard we would prevail because I think that we have, we have a due process right to present potentially mitigating evidence to the court. I didn't see any need for a psychological evaluation if, in fact, the court was going to accept the plea agreement. It was a favorable agreement. I didn't see any way that we would get a better sentence than that, even with a wonderful psychological evaluation that set forth every possible grant. You're down to about 30 seconds. Do you want to save it for rebuttal? I do, thank you. Thank you very much. Let me just ask one question. Did you raise this question on the psychological evaluation in your brief? I did mention it in my first argument regarding the district court's errors. Just in passing, but not as a proposition of law. I didn't raise it as a separate argument. I thought it fell within the first argument, but I did raise it, Your Honor. All right. Thank you. Mr. Leandro. May it please the Court, Nathan Leonardo. Excuse me. Excuse me. I mispronounced your name. It's Leonardo. It's okay. Nathan Leonardo on behalf of the United States. Good morning. Good morning. The district court, in fact, gave the defendant two opportunities to withdraw his guilty plea. One was before the imposition of sentence. One was after the imposition of sentence. Who was the assistant who negotiated this deal? The name? Yeah. Lauren Anaya. And who was the lawyer that appeared before Judge Roland's sentencing? Sandy Hansen. Supervisor? Yes. Why didn't the government seek to withdraw from the plea agreement based on the escape language?  Well, I think part of the reason was that this breach issue was not raised below, and there was never a hearing in this regard. Well, you know, we expect the government to turn absolutely square corners. And when you enter into a plea agreement, an 11, especially an 11C agreement that calls for a definitive sentence, you've struck your bargain. And unless the defendant violates the plea agreement, breaches it in some material way, the government is obligated to come to court and, if nothing else, remain silent. But here's a lawyer. And the reason given before Judge Roll was that the supervisor thought this was a bad deal. Right? That was the reason. Well, I think first, that was the reason the supervisor gave, that the supervisor did not have a good reason for the court to accept the plea agreement. But what she was doing is responding to the court's direct question, is there any reason why I should accept this plea agreement? And she had a duty of candor to respond honestly to that question, and she honestly did not believe that there was. She could have answered with a simple yes or no rather than sort of exposing the internal, you know, second thoughts of the U.S. Attorney's Office and saying, well, I know there's no reason for you to do this, Your Honor, because, quite frankly, I think the person I'm supervising made a bad deal here. I mean, that's a pretty low blow. Well, certainly that would have been preferable, yes or no. Why should defendants want to enter into plea agreements with your office when they Well, because ultimately the government, in this case, was ready to be bound by that plea agreement. It had signed the plea. Even though it's told the court it had no good reason to recommend it? Yes. And the court had not accepted the agreement. Let's suppose that Judge Rohl had come out and said, I've read the report. I know the PSR recommends against accepting this agreement, but I think under the circumstances, including the apparent unwillingness or reluctance of the victim to come forward based on the relationship with the defendant, I'm inclined to accept the agreement. What say the government? And she had said the same thing. Well, I think that would be a different situation in this case. How? Because the district court in this case was specifically asking for reasons why it should accept the plea agreement, and she hadn't. How about because we agreed with the defendant? We signed an agreement. They did sign an agreement, but the agreement didn't have any provision in it that said that you have to advocate for the acceptance of the plea agreement. That's what you're going to tell defense attorneys in the future? No. If we do an 11C deal with you, by the way, we have no obligation to encourage the court to abide by the agreement and impose the sentence. No. I think the district court ultimately has to make the determination on as to whether or not. We're not talking about the district court's obligation. We're talking about the obligation of the United States government to turn square corners, and they didn't here, did they? They did not recommend that the district court accept the agreement. Or explain to the court why there was good legal and factual reason why the government ought to be excused from the agreement. And the record doesn't reflect. They stood up and said, we think this is a bad deal. This guy got off too lightly. And the record, yes. And the record reflects that it was a bad deal. In fact, the defendant would be getting half the time that he was given. That's because the judge did an extraordinarily kind thing here and told the defendant if he went ahead with the sentence what it would be. Would have been perfectly within Judge Roll's rights to say, I reject it. We're back to ground zero. Correct. Right? But he told the defendant, here's what you're going to get if you go through. And I want you to think about it for a while, and within seven days you can back out. But that had nothing to do with anything the government did at that sentencing hearing, did it? No. But I think it's important that the government be able to respond with candor to the court's question. And, in fact, if this Court ---- Do you think in the ordinary plea agreement where there's no legal cause within the confines of the agreement and the government's agreed to a plea agreement that it's perfectly appropriate if the office has second guesses about having entered into that agreement to tell the Court that? It's preferable to stick with the agreement the way it's ---- It's your obligation, isn't it? Well, under this Court's decisions, a plea agreement is not ---- does not bind the parties until it's been accepted. In this case, it has not been accepted. It had not been accepted when the supervisor made that statement to the district court in response to the district court's direct question. It wanted to know whether or not ---- it wanted to be fully informed before it made the important decision as to whether or not this plea was in the interest of justice. And no matter what the government said, it could have very well rejected the agreement anyway. Indeed, if this Court ---- I want to tell you something. As a former Federal prosecutor, I'm very displeased with the conduct of your office in this case. It's unacceptable. And whatever the panel decides to do with this case, if you take one message back to Tucson, you tell Jennifer Guerin this is absolutely unacceptable and it's behavior beneath the dignity of someone representing the United States of America. Do you understand? Yes, sir. Do you have anything to add to your argument? No, I don't, Your Honor, unless there are further questions. I don't see any. Rebuttal? I would just reiterate that with the conduct of the government and our opportunity that was lost to perhaps present a psychological evaluation to the Court, Mr. Rodriguez suffered egregious harm, due process level harm in not being able to have a good, fair opportunity to have the Court accept the plea. Thank you. Thank you for the argument. Thank both counsel for their argument. The case just argued will be submitted. And we'll proceed to the next case on the argument calendar, which is the United States v. Hammer. Counsel are present. While this gentleman is coming forward, let me ask about the next case on the calendar, Myers v. Redwood City. Are both counsel present? Yes, Your Honor. Okay. Thank you. I just wanted to check. Mr. Reichel.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.   Thank you.
judges: Lay , Hawkins, Bybee